Lolita Cabrera
76 W 25th Street,
Bayonne, NJ 07002
347-469-7862
thecreditassist@gmail.com

Plaintiff in *pro per*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

2023 MAY 22 A 10: 48

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF NEW JERSEY**

LOLITA CABRERA,                          ) Case No.:
         Plaintiff,                      )
     vs.                                 )
BRYAN NAZOR; DOMINICK DeCARLO;           )
JOHN BARTNICK; PATRICIA KELLY;           )
MADLEY SALHAB; CASEY CRAWFORD;           ) **PLAINTIFF'S ORIGINAL COMPLAINT**
SCOTT CONFORTI; ADAM GOLDBERG;           )
JERALYN J. LAWRENCE,TIMOTHY F.           )
MCGOUGHRAN ; DIANE COLEMAN; MAIN         )
STREET TITLE AGENCY; MOVEMENT            )
MORTGAGE, LLC; SALHAB LAW LLC; and
NEW JERSEY STATE BAR ASSOCIATION
         Defendant(s)
_____

NOW COMES Lolita Cabrera, Plaintiff, and files this Complaint against

Bryan Nazor, Dominick DeCarlo, John Bartnick, Patricia Kelly, Madley

Salhab, Casey Crawford, Scott Conforti, Adam Goldberg, Jeralyn J.

Lawrence, Diane Coleman, Main Street Title Agency, Movement Mortgage

LLC, Salhab Law LLC, and New Jersey State Bar Association,

Defendants, and for cause would show this Honorable Court as follows:

PLAINTIFF'S ORIGINAL COMPLAINT - 1

Case 2:23-cv-02745-CCC-LDW   Document 1   Filed 05/22/23   Page 2 of 24 PageID: 2

PLAINTIFF'S ORIGINAL COMPLAINT - 2

## A. **PARTIES**

1.    Plaintiff Lolita Cabrera is a law-abiding female adult citizen of sound mind and a resident of [Insert Address].

2.    Defendant Bryan Nazor (hereinafter referred to as "Mr. Nazor") is a male adult of sound mind and the President of Main Street Title Agency. Mr. Nazor's work address known to Plaintiff is 190 Main St., Hackensack, NJ 07601.

3.    Defendant Dominick DeCarlo (hereinafter referred to as "Mr. DeCarlo") is a male adult of sound mind and Founder and CEO of Main Street Title Agency. Mr. DeCarlo's work address known to Plaintiff is 190 Main St., Hackensack, NJ 07601.

4.    Defendant John Bartnick (hereainafter referred to as "Mr. Bartnick") is a male adult of sound mind and the Operations Manager of Main Street Title Agency. Mr. Bartnick's work address known to Plaintiff is 190 Main St., Hackensack, NJ 07601.

5.    Defendant Patricia Kelly (hereinafter referred to as "Ms. Kelly") is a female adult of sound mind and an employee of Main Street Title Agency. Ms. Kelly's work address known to Plaintiff is 190 Main St., Hackensack, NJ 07601.

6.    Defendant Casey Crawford (hereinafter referred to as "Mr. Crawford") is a male adult of sound mind and the Chief Executive Officer/Founder of Movement Mortgage, LLC. Ms. Crawford's work address known to Plaintiff is 8024 Calvin Hall Road, Indian Land,

SC 29707. At all times, he was acting as an agent of Movement Mortgage.

7.    Defendant Scott Conforti (hereinafter referred to as "Mr. Conforti") is a male adult of sound mind and the Vice President of Movement Mortgage. Mr. Conforti's work address known to Plaintiff is 8024 Calvin Hall Road, Indian Land, SC 29707. At all times, he was acting as an agent of Movement Mortgage.

8.    Defendant Mahdey Salhab (hereinafter referred to as "Mr. Salhab") is a male adult of sound mind and the proprietor of Salhab Law LLC. His work address known to Plaintiff is 1054 Clifton Ave, Clifton, NJ 07013.

9.    Defendant Adam Goldberg (hereinafter referred to as "Mr. Goldberg") is a male adult of sound mind and a loan officer at Movement Mortgage. Mr. Goldberg's work address known to Plaintiff is 8024 Calvin Hall Road, Indian Land, SC 29707. At all times, he was acting as an agent of Movement Mortgage.

10.    Defendant Jeralyn J. Lawrence (hereinafter referred to as "Ms. Lawrence") is a female adult of sound mind and an attorney practicing family law in the State of New Jersey. She is also the President of the New Jersey State Bar Association.

11.    Defendant Diane Coleman (hereinafter referred to as "Ms. Coleman") is a female adult of sound mind and a Register at Hudson County Register Office, NJ. Her work address known to Plaintiff is 257 Cornelison Ave., Jersey City, NJ 07302.

12. Defendant Main Street Title Agency (hereinafter referred to as "Main Street") is a full-service title and settlement agency licensed in various states, including the State of New Jersey. Main Street's address known to Plaintiff is 190 Main St., Hackensack, NJ 07601.

13. Defendant Movement Mortgage, LLC (hereinafter referred to as "Movement Mortgage") is a company registered in South Carolina that assists people, including in the State of New Jersey, to obtain mortgage loans. Movement Mortgage's address known to Plaintiff is 8024 Calvin Hall Road, Indian Land, SC 29707.

## B. **JURISDICTION AND VENUE**

14. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331. This lawsuit regards the violation of federal laws of the United States.

15. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332. All Parties apart from Movement Mortgage are residents of the State of New Jersey. Movement Mortgage is a resident of the State of South Carolina. The amount of controversy in this matter is way more than $75,000.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and causes of action described herein took place in Hudson County which is within the State of New Jersey.

The Subject Property of this case is also located in Hudson County, New Jersey.

### C. STATEMENT OF FACTS

17.   On January 24, 2023, Plaintiff inquired with Adam Goldberg, the loan officer from Movement Mortgage, about buying property.

18.   Mr. Goldberg sent Plaintiff a link to apply for a mortgage loan with Movement Mortgage.

19.   On February 16, 2023, Mr. Goldberg notified Plaintiff of the requirements for a second FHA home loan as well as the guidelines for a mortgage loan with Movement Mortgage.

20.   On March 3, 2023, Plaintiff and her realtor, Michael Geller from the Samir Group Real Estate, visited the property at 76 W 25th St., Bayonne, NJ 07002 (hereinafter referred to as the "Subject Property") and Plaintiff expressed interest in purchasing the property.

21.   Mr. Goldberg advised Plaintiff and Mr. Geller to send the offer to the sellers of the Subject Property.

22.   On March 28, 2023, the sellers of the Subject Property accepted Plaintiff's offer for the property. Plaintiff offered to buy the Subject Property at a cost of $840,000.00.

23.   On March 30, 2023, all documents were sent to Mr. Goldberg. He approved most of the documents and waited for his underwriting team to request anything that was missing.

24. On April 3, 2023, Plaintiff signed a contract with sellers of the Subject Property for purchase of the property in the sum of $840,000.00 with the condition of a 30-day closing.

25. Plaintiff sent a certified check of $14,700.00 from her business account to Mr. Salhab of Salhab Law, LLC.

26. On April 5, 2023, the Subject Property was appraised and its value was determined to be $870,000.00.

27. On April 21, 2023, the mortgage loan was approved and all documents were submitted to Movement Mortgage and Mr. Goldberg.

28. On April 28, 2023, Plaintiff went to the offices of Salhab Law, LLC to sign a unilateral contract. She was told that the closing balance amount would be $44,657.80.

29. Plaintiff realized that she had left her checkbook and headed to Bank of America which was right across the street to retrieve a check of $44,657.80.

30. The queue was a bit long and Plaintiff returned to the attorney's office to sign the documents at around 03:25pm.

31. At the time Plaintiff was signing the documents, it was only her, the attorney, Plaintiff's partner, and Plaintiff's stepfather.

32. Plaintiff was elated and cried tears of joy because she was happy to purchase a second home.

33. The attorney, Mr. Salhab, asked Plaintiff to drop off the certified check and the documents at Main Street's address.

34.    At approximately 04:15pm, Plaintiff reached Main Street's address and met the receptionist who congratulated her for owning another home. Plaintiff dropped off the check and the documents.

35.    On April 29, 2023, Plaintiff was given access to the house keys after everything was completed with Mr. Geller.

36.    On April 30, 2023, Plaintiff streamed live on her Instagram account and discussed FHA guidelines and how she was excited about purchasing the Subject Property.

37.    Mr. Orlando Acosta joined Plaintiff as she was streaming and Plaintiff said that her lawyer mentioned that Plaintiff's loan would be sold at some point. Plaintiff's gut feeling was that it was wrong for her loan to be sold.

38.    Plaintiff expressed her concern with Mr. Acosta who informed her that she was a victim of mortgage fraud.

39.    He asked Plaintiff if she had received her right to rescission documents and original ink signature deed at closing.

40.    Plaintiff said that she didn't receive the right to rescission documents and original ink signature deed at closing.

41.    Mr. Acosta advised Plaintiff to reach out to her lender and ask them not to record her original ink signature deed.

42.    Plaintiff sent a message to Mr. Goldberg and stated that she was getting her trust set up and she did not want the original ink signature deed recorded. Mr. Goldberg asked Plaintiff to call her attorney.

43.    At 06:28pm, Plaintiff sent a message to Mr. Salhab and told him that she did not want her deed to be recorded.

44.    At 07:11pm, Plaintiff sent an email to Main Street and asked them not to record her deed.

45.    At 07:43pm, Mr. Bartnick replied and asked Plaintiff to speak to Mr. Nazor who was also communication copied in the email.

46.    On May 1, 2023, Plaintiff called Main Street at 09:00am and spoke to a Valentina. She left a message for Mr. Nazor to call her back and also to not file the deed.

47.    At 09:14am, Plaintiff sent an email to Mr. Bartnick and Mr. Nazor and stated that she was not giving her consent to the deed being recorded and that she would be at Main Street's address to pick it up.

48.    At 09:34am, Mr. Nazor called Plaintiff and she gave the phone to Mr. Acosta to speak as her power of attorney. Mr. Nazor and Mr. Acosta knew that the conversation was being recorded.

49.    An argument ensued between Mr. Nazor and Mr. Acosta on the basis that Plaintiff was simply stating her consumer rights and demanding that the signature deed be returned to her.

50.    After the phone call, Plaintiff reached out to Movement Mortgage and revoked all emails, and rescinded their security interest in Plaintiff's property by terminating the contract.

51.    When Plaintiff called Mr. Nazor, he was very rude to her and hung up the phone twice. He said to her in a recorded line

that the mortgage note and the deed would be recorded anyway without her consent and that he had to protect the bank's interest, which was not true since Plaintiff had rescinded the contract.

52. Mr, Salhab and Mr. Goldberg asked to be contacted because Plaintiff was rescinding all legal obligations ans securities into her private dwelling. Plaintiff sent an email and notified everyone, including Main Street.

53. At 10:01am, Mr. Nazor replied asking Plaintiff if she would be keeping the property or rescinding the transaction. She confirmed that she was doing both.

54. At 10:41am, Plaintiff reached out to Hudson County records office and put them on notice that if a deed was received for the subject property, she never consented to that.

55. At 11:29am, Plaintiff sent another email to Mr. Nazor and Mr. Bartnick demanding the original ink deed and that her funds amounting to $59,657.80.

56. Plaintiff also stated that she would go to pick the original ink deed on May 4, 2023 at 11:00am as she rescinded any potential interest into the property that the bank potentially had.

57. Plaintiff mentioned that a forensic mortgage audit would be conducted, and a complaint sent to the FBI Mortgage Fraud Department, U.S. Attorney General's office, the State of New

Jersey Attorney General's office, the IRS Commissioner's office, and the Office of the Comptroller of Currency.

58.   At 12:00pm, Plaintiff forwarded all emails from Mr. Nazor to Mr. Goldberg, Mr. Salhab, Ms. Kelly, and Mr. Bartnick.

59.   Plaintiff tried to reach out to Mr. DeCarlo to resolve the issue amicably, but he never responded.

60.   On May 1, 2023 at 10:38am, Plaintiff sent an email to the Office of the Register of Deeds and Mortgages stating: "This is to put your office on notice if a deed is received for 76 W 25th Bayonne, NJ 07002 by the title or mortgage or lawyer office, I Lolita Cabrera 05/01/2023 time 10:38am DO NOT consent to the deed being recorded as it will be put in a trust."

61.   Lisa Prusko, the deputy register, Joyce Hardy, Linda Hampton, Antoniett Callipari replied at 10:44am saying, "Please be advised if the deed is received in the proper order we record it. We do not accept emails stating anything advising us not to record a deed. We would suggest you reach out to an attorney regarding this matter."

62.   On May 5, 2023, Movement Mortgage put the fraudulent mortgage on Plaintiff's credit.

63.   On May 6, 2023, Main Street sent Plaintiff the original deed.

64.   On May 8, 2023, agents of Movement Mortgage put the fraudulent loan through and put in on Plaintiff's credit with

Experian, Transunion and Equifax. Plaintiff is required to pay an alleged original balance of $824,78**5**, making monthly payments of $7,16**1**.40

65.    On May 11, 2023, at 01:00pm, a woman named Melissa from Movement Mortgage called Plaintiff. Plaintiff expressed to her what was happening and how she had rescinded the loan contract that Movement Mortgage had proceeded to put in Plaintiff's credit file.

66.    Plaintiff asked Melissa how Movement Mortgage could have put a fraudulent mortgage on Plaintiff's credit, yet she had, and still has the original ink signature deed.

67.    Plaintiff asked Melissa to produce documents and names of everyone who pushed the fraudulent mortgage through even after Plaintiff had sent out emails that she had rescinded the transaction. Melissa could not produce the documents and information requested by Plaintiff. She said that the Vice President of Movement Mortgage would call Plaintiff.

68.    At 02:46pm, Plaintiff called her power of attorney and called Melissa back. Melissa put the Vice President on a recorded call.

69.    Plaintiff and her power of attorney explained their circumstances in detail and outlined Plaintiff's demands to return her funds, get the fraudulent loan removed from Plaintiff's profile, and cancel the fraudulent contract.

70.    Plaintiff asked the Vice President to produce the same fails she had asked Melissa and he too, could not produce them.

71.    As a result, Plaintiff has lost a total of $59,657.80 which has not been refunded to her after she expressly informed Defendants of her intention to rescind the transaction and the Register's office went ahead and recorded her original ink signature deed under Defendants' instructions.

72.    The foregoing events have caused Plaintiff mental anguish and emotional distress that she has not suffered before. She saved money to purchase a second home since her family was becoming bigger.

73.    When she realized that the transaction was fraudulent and wanted to exercise her right to rescind it, Defendants maliciously declined to allow her to rescind the transaction.

## D. CAUSES OF ACTION

### Count One: Violation of 15 U.S. Code § 1635

74.    Plaintiff hereby incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

75.    15 U.S. Code § 1635(a) provides as follows:

> "*Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the*

PLAINTIFF'S ORIGINAL COMPLAINT - 14

*rights of the obligor under this section.*

*The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section."*

76.    The security interest for the mortgage loan in this case is the Subject Property. Accordingly, pursuant to the above provision, Plaintiff had a right to rescind the transaction until May 3, 2023, which was 3 business days after the transaction was completed.

77.    The transaction was consummated on April 28, 2023 when Plaintiff delivered the transaction and contract documents to Main Street's address. The day was a Friday.

78.    The above provision imposes a duty on Defendants to clearly and conspicuously disclose Plaintiff's rights in 15 U.S. Code § 1635.

79.    Plaintiff had a right to clear and conspicuous disclosure of her right to rescind the transaction by Defendants.

80.    15 U.S. Code § 1635 imposes a duty on Defendants to provide appropriate forms for Plaintiff to exercise her right to rescind the transaction.

81.    On April 30, 2023, Plaintiff exercised her right to rescind the transaction when she sent an email to Mr. Goldberg, Mr. Salhab, and Main Street.

82.  Plaintiff exercised her right two days after the transaction was consummated.

83.  Defendants violated Plaintiff's right to disclosure of her right to rescind the transaction when they failed to disclose to Plaintiff that she had the right to rescind the transaction.

84.  Defendants failed to perform their duty to provide Plaintiff with appropriate forms for Plaintiff to exercise her right to rescind the transaction as they did not provide Plaintiff with such forms.

85.  As a result of Defendants acts and omissions, Plaintiff has suffered financial damage in the sum of $59,657.80 as well as mental anguish and emotional distress.

86.  Defendants are liable for Violation of 15 U.S. Code § 1635 and ought to pay damages to Plaintiff.

### Count Two: Violation of 15 U.S.C. § 1681s-2

87.  Plaintiff hereby incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

88.  15 U.S.C. § 1681s-2(a)(1)(A) provides as follows:

"*A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.*"

*89.* Agents of Movement Mortgage furnished inaccurate information to Experian, Transunion and Equifax.

*90.* The inaccurate information was that Plaintiff owes a mortgage loan of $824,78_ and is supposed to make monthly payments of $7,16_.

91. 15 U.S.C. § 1681s-2(a)(1)(B) further provides:

"*A person shall not furnish information relating to a consumer to any consumer reporting agency if:*

*(I) The person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and*

*(II) The information is, in fact, inaccurate.*"

92. Before furnishing the above inaccurate information, Plaintiff, the consumer, notified agents of Movement Mortgage that the contract was revoked by Plaintiff and the transaction was rescinded.

93. Indeed, the contract was revoked and the transaction was rescinded under 15 U.S. Code § 1635. Plaintiff had sent agents of Movement Mortgage emails notifying them that she had revoked the contract and rescinded the transaction.

94. Agents of Movement Mortgage maliciously furnished Experian, Transunion and Equifax with inaccurate information even when Plaintiff had notified them that she had revoked the contract and rescinded the transaction, therefore she had not taken any loan.

95.    After agents of Movement Mortgage maliciously furnished Experian, Transunion and Equifax with inaccurate information, Plaintiff reached out to Movement Mortgage to ask them to make things right with Experian, Transunion and Equifax, which they had not done as at the date of filing this Complaint.

### Count Three: Violation of 12 CFR § 1006.34

96.    Plaintiff hereby incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

97.    12 CFR § 1006.34 states that a debt collector must provide a consumer with validation information whenever the consumer requests that information.

98.    Plaintiff asked Melissa to produce documents and names of everyone who pushed the fraudulent mortgage through even after Plaintiff had sent out emails that she had rescinded the transaction. Melissa could not produce the documents and information requested by Plaintiff. She said that the Vice President of Movement Mortgage would call Plaintiff.

99.    At 02:46pm, Plaintiff called her power of attorney and called Melissa back. Melissa put the Vice President on a recorded call.

100.  Plaintiff and her power of attorney explained their circumstances in detail and outlined Plaintiff's demands to return

her funds, get the fraudulent loan removed from Plaintiff's profile, and cancel the fraudulent contract.

101. Plaintiff asked the Vice President to produce the same fails she had asked Melissa and he too, could not produce them.

102. As a consumer, Plaintiff had a right to be presented with the documents to validate the debt that she allegedly owes.

103. As a debt collector, Movement Mortgage and its agents had an obligation to provide Plaintiff with the documents and information she requested to validate the alleged debt.

104. Agents of Movement Mortgage violated Plaintiff's rights under 12 CFR § 1006.34 when they failed to provide Plaintiff with the information she requested in order to validate the alleged debt.

105. As a direct and proximate result of Defendants' actions, Plaintiff has suffered monetary damages, mental anguish and inconvenience.

#### Count Four: Violation of 15 U.S.C. § 1692e

106. Plaintiff hereby incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

107. 15 U.S.C. § 1692e states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a

violation of this section: (10) The use of any false information or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer."

108. On May 9, 2023, Melissa threatened to put false late payments on Plaintiff's account that had been fraudulently opened by Defendants.

109. She was acting as an agent of Movement Mortgage. Her actions amount to violation of 15 U.S.C. § 1692e.

110. Defendants are liable for violation of 15 U.S.C. § 1692e.

### Count Five: Intentional Infliction of Emotional Distress

111. Plaintiff hereby incorporates all foregoing paragraphs of this Complaint by reference as though set out in full herein.

112. In the State of New Jersey, the tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

113. Mr. Nazor acted intentionally when he dismissed Plaintiff's request to rescind the transaction, when he informed Plaintiff that the original deed would be recorded without her consent, and when he spoke rudely to Plaintiff and hung up the phone.

114. Defendants acted intentionally when they recorded Plaintiff's original ink signature deed even when she expressly informed them of her intention to rescind the transaction.

115. Defendants actions and omissions have caused Plaintiff mental anguish and emotional distress that she has not suffered before. She saved money to purchase a second home since her family was becoming bigger.

116. When she realized that the transaction was fraudulent and wanted to exercise her right to rescind it, Defendants maliciously declined to allow her to rescind the transaction.

117. Defendants are liable for intentional infliction of emotional distress and ought to pay damages to Plaintiff at an amount to be determined during trial.

### E. <u>PRAYER FOR RELIEF</u>

REASONS WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Court to GRANT her the following reliefs:

I. GRANT judgment in favor of Plaintiff and against Defendants;

II. ISSUE a declaration that Defendants have violated Plaintiff's rights under 15 U.S. Code § 1635;

III. ISSUE an order requiring Defendants to produce all documents they used to record the deed and put the fraudulent mortgage on Plaintiff's credit;

IV. AWARD Plaintiff special damages in the sum of $59,657.80;

V. AWARD Plaintiff general damages in the sum of $5,000,000;

VI. AWARD Plaintiff punitive damages to hinder Defendant's such acts and/or omissions in future;

VII. AWARD Plaintiff costs of this suit and attorney fees as allowed by law;

VIII. AWARD Plaintiff pre- and post-judgment interests;

IX. AWARD Plaintiff such equitable relief as this Court deems fair under the circumstances; and

X. AWARD Plaintiff such further relief as this Court deems fit to grant.

Dated this _____ day of May, 2023.

                                        Respectfully Submitted,

                                        Lolita Cabrera,
                                        Plaintiff in *pro per*

PLAINTIFF'S ORIGINAL COMPLAINT - 22

**CERTIFICATION PURSUANT TO R. 4:5-1**

Plaintiff hereby certifies pursuant to R. 4:5-1 that there are no other civil proceedings either pending or contemplated with respect to the matter in controversy herein and no other parties who should be joined to this action.

Dated this _____ day of May, 2023.

Respectfully Submitted,

Lolita Cabrera,
Plaintiff in *pro per*

**VERIFICATION**

I, LOLITA CABRERA, of full age, hereby certify that I have read the Complaint and certify that the allegations contained in the Complaint are true to the best of my knowledge and belief. I certify that the foregoing statements are true. I am aware that if any statement made herein is willfully false, I am subject to punishment.

Dated this _____ day of May, 2023.

                                        Respectfully Submitted,


                                                Lolita Cabrera,
                                        Plaintiff in *pro per*

PLAINTIFF'S ORIGINAL COMPLAINT - 24