NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOLITA CABRERA,<br><br>                         Plaintiff,<br><br>v.<br><br>BRYAN NAZOR, *et al.*,<br><br>                         Defendants. | Civil Action No.: 23-2745<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court on the motions to dismiss *pro se* plaintiff Lolita Cabrera's ("Plaintiff") complaint (ECF No. 1, "Compl.") filed by defendants (1) John Bartnick, Dominick Decarlo, Patricia Kelly, Bryan Nazor, and Main Street Title Agency (collectively, the "Main Street Defendants") (ECF No. 20); and (2) Casey Crawford, Adam Goldberg, and Movement Mortgage, LLC (collectively, the "Movement Mortgage Defendants") (ECF No. 25). Plaintiff opposed Defendants' motions (ECF Nos. 23, 30), and Defendants replied in support of their motions (ECF Nos. 26, 31). The Court also considers Plaintiff's motion to strike (ECF No. 22), Plaintiff's motion to file a sur-reply (ECF No. 34-1), and the related briefing. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**, Plaintiff's motion to strike is **DENIED**, and Plaintiff's motion to file a sur-reply is **GRANTED**.

1

II.    **BACKGROUND**

A. **Factual History**[1]

According to Plaintiff's complaint, the instant dispute arises out of Plaintiff's purchase of a residential property located at 76 West 25th Street in Bayonne, New Jersey (the "Subject Property"). *See generally* Compl. Defendant Main Street Title Agency ("Main Street") is a title and settlement agency licensed to operate in various states, including New Jersey. *Id.* ¶ 12. Defendants Mr. Nazor, Mr. DeCarlo, Mr. Bartnick, and Ms. Kelly are Main Street employees. *Id.* ¶¶ 2–5. Defendant Movement Mortgage, LLC ("Movement Mortgage") is a mortgage company registered in South Carolina. *Id.* ¶ 13. Defendants Mr. Crawford and Mr. Goldberg are Movement Mortgage employees. *Id.* ¶¶ 6–7, 9.

Plaintiff's relationship with Movement Mortgage began in January 2023 when she inquired with Mr. Goldberg, a loan officer, about obtaining a home loan to purchase property. *Id.* ¶ 17. Following sellers' acceptance of Plaintiff's offer to buy the Subject Property for $840,000, Plaintiff submitted documentation to Mr. Goldberg for purposes of obtaining "a second FHA home loan." *See id.* ¶¶ 19, 22–23. Ultimately, on April 3, 2023, Plaintiff signed a contract to purchase the Subject Property; on April 21, 2023, Movement Mortgage approved a loan for the home; and on April 28, 2023, Plaintiff "sign[ed] a unilateral contract" at her attorney's office to close on the property, after which she personally delivered a check and documents to a receptionist at Main Street's office. *Id.* ¶¶ 24, 27–28, 32, 34.

On April 30, 2023, Plaintiff commenced a live steam on her Instagram account to "discuss[] FHA guidelines and how she was excited about purchasing the Subject Property." *Id.*

---

[1] For purposes of this motion to dismiss, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

¶ 36.  An individual named Orlando Acosta joined the live stream and, in response to Plaintiff mentioning that her lawyer informed her that her loan would be sold at some point, purportedly informed Plaintiff "that she was a victim of mortgage fraud."  *Id.* ¶¶ 37–38.  Mr. Acosta inquired whether Plaintiff had received "the right to rescission documents and original ink signature deed at closing" and, when she informed him that she had not, Mr. Acosta advised her "to reach out to her lender and ask them not to record her original ink signature deed."  *Id.* ¶¶ 39–41.

Accordingly, Plaintiff proceeded to advise Mr. Goldberg of Movement Mortgage, her attorney, and Mr. Bartnick and Mr. Nazor of Main Street that she did not want her original ink signature deed recorded.  *Id.* ¶¶ 42–47.  When Mr. Nazor called Plaintiff to discuss the matter, "she gave the phone to Mr. Acosta to speak as her power of attorney" and he reiterated her demand that the signed deed be returned to her.  *Id.* ¶¶ 48–49.  Mr. Nazor was "very rude" to Plaintiff, "hung up the phone twice," and told her that the mortgage note and deed would be recorded without her consent.  *Id.* ¶ 51.  When asked by Mr. Nazor whether Plaintiff would be keeping the property or rescinding the transaction, "[s]he confirmed that she was doing both."  *Id.* ¶ 53.  Plaintiff also "reached out to Movement Mortgage and revoked all emails, and rescinded their security interest in Plaintiff's property by terminating the contract."  *Id.* ¶ 50.

In a subsequent email to Mr. Nazor and Mr. Bartnick, Plaintiff again demanded the original ink deed be returned to her, along with deposit funds totaling $59,657.80, and informed them that she would be picking up the original ink deed on May 4, 2023, "as she rescinded any potential interest into the property that the bank potentially had."  *Id.* ¶¶ 55–56.  Plaintiff added that "a forensic mortgage audit would be conducted, and a complaint [would be] sent to the FBI Mortgage Fraud Department, U.S. Attorney General's office, the State of New Jersey Attorney General's office, the IRS Commissioner's office, and the Office of the Comptroller of Currency."  *Id.* ¶ 57.

Plaintiff also contacted the Office of the Register of Deeds and Mortgages indicating that she did not consent to the deed being recorded. *Id.* ¶ 60. Nevertheless, representatives from that Office replied: "Please be advised if the deed is received in the proper order we record it. We do not accept emails stating anything advising us not to record a deed. We would suggest you reach out to an attorney regarding this matter." *Id.* ¶ 61.

Subsequently, on May 5, 2023, Movement Mortgage "put the fraudulent mortgage on Plaintiff's credit" and on May 6, 2023, Main Street sent Plaintiff the original deed. *Id.* ¶¶ 62–63. Then, "[o]n May 8, 2023, agents of Movement Mortgage put the fraudulent loan through and put in [sic] on Plaintiff's credit with Experian, Transunion and Equifax." *Id.* ¶ 64.

On May 11, 2023, Plaintiff began discussions with "a woman named Melissa from Movement Mortgage" to address her concerns about "how Movement Mortgage could have put a fraudulent mortgage on Plaintiff's credit, yet she had, and still has the original ink signature deed." *Id.* ¶¶ 65–66. Melissa informed Plaintiff that she could not oblige Plaintiff's request "to produce documents and names of everyone who pushed the fraudulent mortgage through even after Plaintiff had sent out emails that she had rescinded the transaction." *Id.* ¶ 67. Plaintiff and Mr. Acosta, as her "power of attorney," also spoke to "the Vice President" of Movement Mortgage, who also "could not produce" the requested names and documents despite Plaintiff's explanation of the circumstances. *Id.* ¶¶ 68–70.

Ultimately, "Plaintiff has lost a total of $59,657.80 which has not been refunded to her after she expressly informed Defendants of her intention to rescind the transaction and the Register's office went ahead and recorded her original ink signature deed under Defendants' instructions." *Id.* ¶ 71. The events have also caused Plaintiff "mental anguish and emotional distress." *Id.* ¶ 72.

4

## B. Procedural Background

On May 22, 2023, Plaintiff filed the complaint in this case against the Main Street Defendants, the Movement Mortgage Defendants, Madley Salhab and Salhab Law LLC (the "Salhab Defendants"), Scott Conforti, Jeralyn Lawrence, Timothy McGoughran, Diane Coleman, and the New Jersey State Bar Association.[2]  ECF No. 1.  Plaintiff's complaint asserts claims for: violations of 15 U.S.C. § 1635 (Count One); 15 U.S.C. § 1681s-2 (Count Two); 12 C.F.R. § 1006.34 (Count Three); and 15 U.S.C. § 1692e (Count Four); in addition to intentional infliction of emotional distress (Count Five).  *Id.*  On June 29, 2023, the Salhab Defendants filed an answer (ECF No. 16), in response to which Plaintiff filed a motion to strike certain defenses (ECF No. 22).  The Main Street Defendants and the Movement Mortgage Defendants filed the instant motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on June 30, 2023 and July 10, 2023, respectively.  ECF Nos. 20, 22.  Plaintiff opposed the motions (ECF No. 23, 30) and the Main Street Defendants and Movement Mortgage Defendants each replied (ECF No. 26, 31).  Plaintiff then filed a sur-reply without permission of the Court.[3]  ECF No. 34.

## III.  **LEGAL STANDARD**

### Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[2] On June 24, 2023, Plaintiff voluntarily dismissed her claims against Defendants Timothy McGoughran, Jeralyn Lawrence, and the New Jersey State Bar Association.  ECF No. 15.  Mr. Conforti and Ms. Coleman have not appeared.

[3] On September 18, 2023, more than a month after briefing on the motions to dismiss had been completed, Plaintiff filed a sur-reply brief without leave of the Court.  ECF No. 34.  Two days later, the filing was amended to add a motion for leave to file a sur-reply.  ECF No. 34-1.  The Movement Mortgage and Main Street Defendants each filed objections (ECF Nos. 35, 36) to Plaintiff's sur-reply for failure to comply with Local Civil Rule 7.1(d)(6) which establishes that "No sur-replies are permitted without permission of the

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party.  *Phillips*, 515 F.3d at 234.  Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (citations omitted).  Additionally, the Court must construe *pro se* filings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

## IV.   DISCUSSION

### A.  Main Street & Movement Mortgage Defendants' Motions to Dismiss

#### 1.   15 U.S.C. § 1635 (Count One)

Count One of Plaintiff's complaint alleges a violation of the Truth in Lending Act ("TILA") insofar as the Main Street and Movement Mortgage Defendants allegedly failed to provide proper disclosures about Plaintiff's right to rescind the mortgage transaction as required under 15 U.S.C. § 1635 and to adhere to Plaintiff's demands to rescind the transaction.  "The TILA regulates 'the relationship between lenders and consumers ... by requiring certain disclosures regarding loan terms and arrangements.'"  *Wiggins v. Cap. One Auto Fin.*, No. CV224172RKDEA, 2023 WL 4348730, at *4 (D.N.J. July 5, 2023) (quoting *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009)).  The TILA provides in relevant part:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, including any such interest arising by

---

Judge to whom the case is assigned."  L. Civ. R. 7.1(d)(6).  Plaintiff filed a lengthy opposition to the Defendants' objections (ECF No. 37) to which both sets of Defendants replied (ECF No. 38, 39).  The Court notes that Plaintiff's sur-reply runs over twenty-five pages, in violation of Local Civil Rule 7.2(b) which sets a 15-page limit on reply briefs.  L. Civ. R. 7.2(b).  Nevertheless, setting aside the myriad of procedural issues with the filing, given Plaintiff's *pro se* status, the Court will grant Plaintiff's motion to file a sur-reply and has considered Plaintiff's sur-reply brief in deciding Defendants' motions to dismiss.

operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

15 U.S.C. § 1635(a).

Plaintiff fails to state a claim for violation of § 1635(a) for numerous reasons. First, "the right to rescind under the TILA does not apply to residential mortgage transactions." *Rivera v. Stearns Lending, LLC*, No. CV 23-653, 2023 WL 6962065, at *2 (E.D. Pa. Oct. 20, 2023) (citing *Perkins v. Central Mortgage Corp.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006); 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1) (exempting residential mortgage transactions from a TILA remedy)). Indeed, "15 U.S.C. § 1602(x) defines a residential mortgage transaction as a 'transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.'" *Id.* Here, Plaintiff's complaint sets forth allegations, which the Court accepts as true as it must, that she was obtaining a loan from Movement Mortgage for purposes of financing the acquisition of a dwelling. *See* Compl. ¶¶ 17–19, 32. Therefore, Plaintiff's transaction, as pleaded, is exempted from the right to rescind, and the respective disclosure obligations, under the TILA.

Next, the disclosure provision Plaintiff invokes, per its statutory text, applies only to "any property which is used as the *principal dwelling* of the person to whom credit is extended." 15 U.S.C. § 1635(a) (emphasis added). Plaintiff notes at various points in her complaint that the Subject Property was purchased as a "second home." Compl. ¶¶ 19, 32, 72, 115. Therefore, as pleaded, the Subject Property does not constitute a "principal dwelling" within the meaning of §

7

1635(a).  *See Altier v. Fed. Nat'l Mortg. Ass'n*, No. 1:16-CV-296-MW-GRJ, 2017 WL 1659027, at *3 (N.D. Fla. Mar. 29, 2017) ("Based upon the plain language of TILA, Plaintiffs have no right of rescission because the rescission provisions of TILA do not apply to second homes and do not apply to residential mortgage transactions where the borrower uses the borrowed funds to purchase or construct the dwelling."), *report and recommendation adopted,* No. 1:16CV296-MW/GRJ, 2017 WL 1650023 (N.D. Fla. Apr. 28, 2017); *Cap. Quest LLC v. Morales*, No. 96 CIV. 9135(HB), 1997 WL 531311, at *1 (S.D.N.Y. Aug. 27, 1997) ("For the purposes of TILA, a person can only have one principal dwelling at a time.  A second home or vacation home will not be considered the borrower's principal dwelling, even if he intends to reside there in the future." (citing *Scott v. Long Island Savings Bank,* 937 F.2d 738, 741 (2d Cir. 1991)).[4]  In short, because Plaintiff's allegations indicate the mortgage loan was used to acquire a residential property, and she does not allege that she was extending a security interest in her "principal dwelling" but rather a "second home," she fails to state a claim under 15 U.S.C. § 1635(a) against either set of Defendants.

Turning to the Main Street Defendants' motion specifically, the TILA establishes certain rights and responsibilities for a borrower vis-à-vis *lenders.  Wiggins* 2023 WL 4348730, at *4. Plaintiff does not allege that the Main Street Defendants serve as a lender or were a party to the

---

[4] The Second Circuit has explained:

> [There is a dearth of case law] addressing the issue whether a particular residence was a borrower's 'principal dwelling' within the meaning of section 1635(a).  However, the Board of Governors of the Federal Reserve System has issued Regulation Z to implement the TILA, *see* 12 C.F.R. § 226.1 (1991) et seq., and *id.* § 226.23(a) reiterates the 'principal dwelling' requirement of section 1635(a).  An official staff interpretation of this provision by the Board's Division of Consumer and Community Affairs, *see* 12 C.F.R. Pt. 226, App. C (1991), states:  "A consumer can only have *one* principal dwelling at a time.  A vacation or other second home would not be a principal dwelling."  *See* 12 C.F.R. Pt. 226, Supp. I12 C.F.R. Pt. 226, Supp. I, at 392 (1991).

*Scott*, 937 F.2d at 741; *see also In re Crisomia*, No. 00-0938, 2002 WL 31202722, at *11 (Bankr. E.D. Pa. Sept. 13, 2002) (explaining the same).

mortgage transaction between Plaintiff and Movement Mortgage. *See generally* Compl. Indeed, the allegations in Plaintiff's complaint cannot be understood to set forth any basis in which the Main Street Defendants were in a proper position to rescind the transaction between Plaintiff and Movement Mortgage. *Id.* Therefore, Plaintiff's complaint, as pleaded, further fails to state a plausible claim for relief specifically against the Main Street Defendants for violation of 15 U.S.C. § 1635(a).

### 2.   15 U.S.C. § 1681s-2 (Count Two)

Count Two of Plaintiff's complaint alleges a violation of the Fair Credit Reporting Act ("FCRA") insofar as the Main Street and Movement Mortgage Defendants allegedly provided false information to credit reporting agencies about Plaintiff's mortgage. The FCRA "created a regulatory framework governing consumer credit reporting in order 'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 236–37 (3d Cir. 2023) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014)).

Plaintiff's complaint specifically seeks relief under subsection (a) of § 1681s–2. *See* Compl. ¶¶ 88, 91. This portion of the FCRA establishes that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Moreover, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if—(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *Id.* § 1681s-2(a)(1)(B). However, while the FCRA "has several provisions that

create liability for violations of the Act," "15 U.S.C. § 1681s–2(**b**) [i]s the only section [of the FCRA] that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008)) (emphasis added).  Indeed, the FCRA's civil liability provisions "cannot be used by a private individual to assert a claim for a violation of § 1681s–2(a)," as Plaintiff seeks to do, "as such claims are available only to the Government." *Id.* (citations omitted).

Construing Plaintiff's complaint liberally, as the Court must, and out of an abundance of caution, the Court will examine Plaintiffs allegations under § 1681s–2(b), which requires creditors to investigate certain consumer disputes.  "To state a claim under Section 1681s–2(b), a plaintiff must meet three pleading requirements: '(1) [he] sent notice of disputed information to a consumer reporting agency [per 15 U.S.C. § 1681i(a)(2)], (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.'"  *Franchino v. J.P. Morgan Chase Bank, N.A.*, No. 319CV20893FLWTJB, 2020 WL 3046318, at *3 (D.N.J. June 8, 2020).  As the Third Circuit has explained:

> Although a private citizen may bring an action under 15 U.S.C. § 1681s–2(b), this cause of action is not without limitations.  The duties that are placed on furnishers of information by this subsection are implicated only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency."  15 U.S.C. § 1681s–2(b)(1).  Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer.  *See Chiang*, 595 F.3d at 35 n.8; *Gorman*, 584 F.3d at 1154; *Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639 (5th Cir. 2002).

*SimmsParris*, 652 F.3d at 358.

In the present case, Plaintiff fails to allege that she notified a credit reporting agency about the purported dispute with the Movement Mortgage Defendants over the accuracy of the mortgage information.  Thus, Plaintiff fails to state a claim under § 1681s–2(b).  *See Franchino*, 2020 WL 3046318, at *3 ("Without such facts, Plaintiff's Section 1681s–2(b) claim fails at the threshold, since Defendant has no obligation to investigate under that provision unless it receives notification from a credit reporting agency.  Plaintiff only alleges that he disputed his account status with Defendant directly, . . . which plainly does not meet the notice requirement." (citing 15 U.S.C. §§ 1681s–2(b), 1681i(a)(2); *Burrell v. DFS Services, LLC*, 753 F. Supp. 2d 438, 448 (holding that consumers cannot maintain FCRA claims based on disputes filed directly with "furnishers of information"); *Ameri v. Equifax Info.*, No. 14-3319, 2015 WL1275283, at *4 (D.N.J. Mar. 19, 2015) ("It is important to emphasize that [the FCRA] does not provide relief for consumers who lodge their dispute directly with a furnisher of information."))).

Additionally, the Main Street Defendants argue that Plaintiff's FCRA claim against them must be dismissed because "Count Two does not contain a single allegation against the Moving Defendants.  Nor are there any allegations elsewhere in the complaint which support any elements of a claim against the Moving Defendants for allegedly violating Section 1681s-2."  ECF No. 20-1 at 15.  Indeed, while Plaintiff's complaint sets forth allegations regarding the Movement Mortgage Defendants' reporting conduct, it does not provide any allegations that Main Street or its employees furnished any information at all, let alone inaccurate information, to a credit reporting agency.  *See generally* Compl.  Therefore, Plaintiff fails to state a claim against the Main Street Defendants for violation of the FCRA.

Finally, Plaintiff appears to abandon her FCRA claim against the Movement Mortgage Defendants in her opposition.  Plaintiff's opposition brief does include a header that reads "Count

Two of Plaintiff's Complaint Should Not be Dismissed." ECF No. 30 at 22. However, that section includes a discussion of the TILA, seemingly related to Count One of Plaintiff complaint and not the FCRA. *See id.* at 22–25. As the Movement Mortgage Defendants note, the FCRA is not mentioned at any point in Plaintiff's opposition. *See* ECF No. 31 at 11 ("Significantly, Plaintiff's Opposition Brief wholly fails to address this point."); *see generally* ECF No. 30. Where a plaintiff fails to "respond to [a] [d]efendant's arguments on [certain] claims or mention them at all in her brief," Plaintiff waives such claims. *Yucis v. Sears Outlet Stores, LLC*, No. CV1815842RBKAMD, 2019 WL 2511536, at *4 & n.4 (D.N.J. June 18, 2019) (collecting cases), *aff'd as modified,* 813 F. App'x 780 (3d Cir. 2020). Therefore, based on the multiple grounds described above, the Court will dismiss Count Two of Plaintiff's complaint.

### 3.  12 C.F.R. § 1006.34 (Count Three) & 15 U.S.C. § 1692e (Count Four)

Counts Three and Four of Plaintiff's complaint allege violations of the Fair Debt Collection Practices Act ("FDCPA"). "[The FDCPA] provides consumers with a private cause of action against debt collectors who fail to comply with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). 12 C.F.R. § 1006.34 requires debt collectors to furnish certain information to consumers to validate a debt. It specifically provides as follows:

(a) Validation information required—

(1) In general. Except as provided in paragraph (a)(2) of this section, a debt collector must provide a consumer with the validation information required by paragraph (c) of this section either:

(i) By sending the consumer a validation notice in the manner required by § 1006.42:

(A) In the initial communication, as defined in paragraph (b)(2) of this section; or

(B) Within five days of that initial communication; or

(ii) By providing the validation information orally in the initial communication.

12 C.F.R. § 1006.34.  Separately, 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  "To prevail in an FDCPA action, a plaintiff must prove that (1) [plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citations omitted).

Both the Main Street Defendants and the Movement Mortgage Defendants argue that dismissal of Counts Three and Four is warranted because they are not "debt collectors" within the meaning of the FDCPA.  ECF No. 20-1 at 16–18; ECF No. 25-1 at 19, 23.

> The FDCPA provides two alternative definitions of a debt collector:  (1) any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition).

*Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 632 (E.D. Pa. 2019) (citing *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019); 15 U.S.C. § 1692a(6)).  With respect to the "principal purpose" criteria, the Third Circuit has established that an "entity that has the 'collection of any debts' as its 'most important' 'aim' is a debt collector" within the meaning of the FDCPA.  *Barbato*, 916 F.3d at 267 (quoting 15 U.S.C. § 1692a(6)).  As for the "regularly collects" criteria, the U.S. Supreme Court has clarified "this definition is solely applicable to a person or entity who collects debt on behalf of 'another.'  If 'the target of the lawsuit regularly seeks to collect debts for its own account,' the party does not fall under the 'regularly collects' definition of the FDCPA."  *Stone*, 415 F. Supp. 3d at 633 (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017)).

13

Here, neither the Main Street Defendants nor the Movement Mortgage Defendants meet either criteria. First, turning to the Main Street Defendants, Plaintiff alleges that "Defendant Main Street Title Agency is a full-service *title and settlement agency*." Compl. ¶ 12 (emphasis added). Federal courts have routinely dismissed FDCPA claims against title companies for failure to sufficiently allege that they are "debt collectors" within the "principal purpose" or "regularly collects" criteria under the FDCPA.[5]  *See Fisher v. Cong. Title*, No. CIV.A.06-1607(JBS), 2007 WL 77333, at *2 (D.N.J. Jan. 8, 2007) (dismissing FDCPA claim while noting the FDCPA is not "no[t] concern[ed] with the activity of escrow agents or title companies, or others whose conduct in the *payment* of debts might be complained of"), *aff'd,* 247 F. App'x 372 (3d Cir. 2007); *Nwonwu v. Brill Title Co.*, No. 6:22-CV-03061-MDH, 2022 WL 17093947, at *2 (W.D. Mo. Nov. 21, 2022) ("Taking Plaintiff's complaint as a whole, Plaintiff appears to assert Defendant was simply the title company associated with the real estate transaction.  Plaintiff does not appear to allege Defendant, a title company, constituted a debt collector.  Plaintiff's pleadings fail to establish Defendant constitutes a debt collector for FDCPA statute purposes."), *aff'd,* No. 22-3654, 2023 WL 4344128 (8th Cir. Feb. 3, 2023); *Shetty v. Lewis*, No. 16-CV-03112-BLF, 2017 WL 1177993, at *7 (N.D. Cal. Mar. 30, 2017) ("Accordingly, it appears on the face of the FAC that Defendants are not debt collectors collecting a debt within the meaning of the FDCPA.  Shetty's conclusory allegation that 'Defendants M. Lewis Inc., Michael Allen Lewis and First American Title Company attempting to collect and collecting the debt is a

---

[5] As another court in this District has explained, "[a]ccording to the Senate Committee on Banking's report on the FDCPA, the exemption for escrow agents was intended to be straightforward and broad."  *Fisher*, 2007 WL 77333, at *2.  Indeed, the report noted that "The committee intends the term 'debt collector,' . . . to cover all third persons who regularly collect debts for others.  The primary persons intended to be covered are *independent debt collectors*.  [T]he committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries...." *Id.* at 3 (quoting Sen. Rep. No. 95–382, at 3 (1977) *as reprinted in* U.S.C.C.A.N. 1695, 1697–98).

debt collector within the meaning of 15 U.S.C.A. § 1692a(6),' . . . is insufficient to state a claim against Defendants under the FDCPA."), *aff'd*, 704 F. App'x 687 (9th Cir. 2017).[6]

The complaint likewise fails to allege that the Movement Mortgage Defendants satisfy either debt collector definition.  Plaintiff alleges that "Defendant Movement Mortgage, LLC . . . is a company . . . that assists people, including in the State of New Jersey, to *obtain mortgage loans*."  Compl. ¶ 13 (emphasis added).  Throughout Plaintiff's complaint, she sets forth allegations demonstrating that Movement Mortgage and its employees assisted her with processes in which Movement Mortgage was engaging in some task other than collecting a debt.  *See*, *e.g.*, *id.* ¶¶ 17–19 (Mr. Goldberg of Movement Mortgage assisting Plaintiff in *applying* for  mortgage loan to purchase property); ¶¶ 21, 23, 27 (Mr. Goldberg advising Plaintiff to send purchase offer to sellers and subsequently processing loan documents).  Accordingly, Plaintiff's complaint does not allege that Movement Mortgage's "most important" "aim" is collecting debts, meaning it does satisfy the principal purpose criteria.  *See Barbato*, 916 F.3d at 267 (contrasting a debt collector, which has "one need for consumers: for them to pay their debts," with a traditional creditor, such as bank "for which debt collection is one of perhaps many parts of its business"); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 370 (3d Cir. 2018) (holding a defendant was a debt collector when "[i]ts admitted sole business is collecting debts"); *Kurtzman v. Nationstar Mortgage LLC*, 709 F. App'x 655, 659 (11th Cir. 2017) (dismissing FDCPA claim against mortgage servicer when "[t]he complaint is silent regarding whether the principal purpose of [the defendant mortgage loan servicer's] business is collecting debts, and it only generally asserts that [the defendant mortgage

---

[6] Moreover, although an FDCPA claim requires an attempt to collect a debt (*Moyer*, 991 F.3d at 470), Plaintiff admits in her opposition that "[t]he complaint does not allege that the [Main Street] Defendants ever contacted the Plaintiff to demand payment of a debt.  Instead, the complaint alleges that the [Main Street] Defendants were involved in the closing of the Plaintiff's mortgage loan."  ECF No. 23 at 16.

loan servicer] 'regularly attempts to collect debts not owed to [it]'"); *Gross v. LoanCare LLC*, No. 1:21-CV-5589 (ALC), 2022 WL 4585418, at *3 (S.D.N.Y. Sept. 29, 2022) ("Plaintiff merely recites the FDCPA's definition of a 'debt collector' in his complaint and does not allege any facts to support the allegation that CIT's principal purpose is debt collection . . . .  Accordingly, the FDCPA claims against CIT are dismissed because CIT is not a debt collector under the FDCPA."); *see also Perry v. Stewart Title Company*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the history of the Act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of the debt).

Next, Plaintiff's allegations indicate that her mortgage debt is owed to Movement Mortgage.  *See* Compl. ¶ 18 ("Mr . Goldberg sent Plaintiff a link to apply for a *mortgage loan with Movement Mortgage*." (emphasis added)); *id.* ¶ 50 ("Plaintiff reached out to Movement Mortgage and revoked all emails, and rescinded *their security interest* in Plaintiff's property by terminating the contract." (emphasis added)); *id.* ¶ 64 ("[A]gents of Movement Mortgage put the fraudulent loan through and put in [sic] on Plaintiff's credit with Experian, Transunion and Equifax."). Plaintiff does not set forth any allegations about Movement Mortgage collecting debt on behalf of another entity.  *See generally id.*  As discussed above, a creditor seeking to collect a debt on its own behalf does not constitute a "debt collector" under the FDCPA, as is required to state a claim. *See Ahmed v. Wells Fargo Bank, NA*, 432 F. Supp. 3d 556, 565–66 (E.D. Pa. 2020) (dismissing FDCPA claim where "[t]here [wa]s no allegation that Ahmed owed debt to anyone other than Wells Fargo; indeed, Wells Fargo collected payments from her on its own behalf."); *Stone*, 415 F. Supp. 3d at 633 ("In this case, the Defendant was the noteholder to Plaintiff's debt for the period at issue and was seeking to collect on its own behalf.  Because Defendant collects on its own behalf, this definition of 'debt collector' does not apply to Defendant."); *Nwoke v. Countrywide*

*Home Loans, Inc.*, 251 F. App'x 363, 364–65 (7th Cir. 2007) (stating Countrywide not a "debt collector" for FDCPA purposes when it attempted to collect its own debt using its own name). Therefore, under the allegations as pleaded, Movement Mortgage does not satisfy the "regularly collects" prong as defined by the U.S. Supreme Court in *Henson*. Because neither the Main Street Defendants nor the Movement Mortgage Defendants satisfy the definition of "debt collector" as provided by the statue, Plaintiff fails to state a claim under the FDCPA and Counts Three and Four will be dismissed.

4.  <u>Intentional Infliction of Emotional Distress (Count Five)</u>

Count Five of Plaintiff's complaint alleges intentional infliction of emotional distress stemming from the Movement Mortgage and Main Street Defendants' conduct.

> Under New Jersey law, to make out a *prima facie* case of [intentional infliction of emotional distress], a plaintiff must show that: (1) the defendant acted intentionally [or recklessly]; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it.

*Cagno v. Ivery*, No. CV1920384ZNQTJB, 2022 WL 17887231, at *8 (D.N.J. Dec. 23, 2022) (citing *Segal v. Lynch*, 413 N.J. Super. 171, 186–87 (App. Div. 2010)).

Defendants' conduct as pleaded—namely that certain information was not disclosed, the transaction was not rescinded, incorrect information was reported to credit reporting agencies, and Plaintiff's deed was recorded despite her objections (*see generally* Compl.)—is insufficient to plausibly constitute an intentional or reckless act that is "utterly intolerable in a civilized community." *Cagno*, 2022 WL 17887231, at *8. The same is true as to Plaintiff's contentions that Mr. Nazor "was very rude to her and hung up the phone twice." Compl. ¶ 51; *see Ferraro v. Bell Atlantic Co., Inc.*, 2 F. Supp. 2d 577, 589 (D.N.J. 1998) (finding that although defendant

treated plaintiff in a rude and unprofessional manner, his conduct "did not rise to the level of outrageousness necessary to constitute intentional infliction of emotional distress.").

Moreover, Plaintiff's complaint does not adequately plead the severe emotional distress component of an intentional infliction of emotional distress claim. "Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including ... posttraumatic stress disorder." *Anastasia v. Cushman & Wakefield*, No. CIV.A. 08-1880 (JLL), 2009 WL 723379, at *5 (D.N.J. Mar. 13, 2009) (quoting *Taylor v. Metzger,* 152 NJ. 490, 515 (1998)). Here, Plaintiff merely cursorily alleges that the alleged events "caused Plaintiff mental anguish and emotional distress that she has not suffered before." Compl. ¶ 72. Plaintiff's allegations, as pleaded, fail to meet the requirement that the "the emotional distress was so severe that no reasonable person could be expected to endure it," as is required to state a *prima facie* claim for intentional infliction of emotional distress. *Cagno*, 2022 WL 17887231, at *8. Therefore, Count Five of Plaintiff's complaint will be dismissed.

### B. Plaintiff's Motion to Strike the Salhab Defendants' Defenses

The Court next considers Plaintiff's motion to strike 27 of the Salhab Defendants' 36 "Separate Defenses" included in their answer. ECF No. 22. The Court assumes that Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"). The Salhab Defendants did not file an opposition to Plaintiff's motion.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A district court may do so "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ.

P. 12(f)(1)-(2).  The Third Circuit has established that a district court "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).  Moreover, "motions to strike under Rule 12(f) are highly disfavored." *F.T.C. v. Hope Now Modifications, LLC*, No. CIV. 09-1204 JBS/JS, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011) (citation omitted).  Indeed, "'even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.'" *Id.* (quoting *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009)).  Finally, the Court's determination on a "motion to strike under Rule 12(f) is discretionary." *Id.* at *2 (citation omitted); *see also Signature Bank v. Check-X-Change, LLC*, No. CIV.A. 12-2802 ES, 2013 WL 3286154, at *2 (D.N.J. June 27, 2013) (observing that "a court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

Plaintiff's motion to strike the vast majority of the Salhab Defendants' defenses fails for multiple reasons.  First, Plaintiff appears to attempt to improperly use the motion to strike as a vehicle to argue the merits of the case.  For example, Plaintiff seeks to strike the Salhab Defendants' "Second Separate Defense" which states, "[t]he Complaint herein fails, in whole or in part, to state a cause of action upon which relief may be granted and/or the Defendants are entitled to judgment as a matter of law, and the Defendants reserve the right to move at or before the time of trail [sic] to dismiss the Complaint."  ECF No. 16 at 12.  In support, Plaintiff argues she "has clearly stated causes of action upon which relief can be granted.  Examining the facts presented, it becomes evident that the defendants, including MADLEY Salhab and Salhab Law LLC, have engaged in actions that warrant legal redress."  ECF No. 22 at 4–5.  Plaintiff contends

those actions render the defense "moot."  *Id.* at 3.  However, "[a] motion to strike is not the proper device for placing the actual merits of the party's pleadings in issue, or challenging the legal correctness of an argument."  *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, No. 2:15-CV-00809, 2018 WL 791405, at *2 (W.D. Pa. Feb. 8, 2018) (citation omitted), *aff'd*, No. 22-1140, 2023 WL 5554644 (3d Cir. Aug. 29, 2023); *see also In re Merck & Co., Inc. Vytorin ERISA Lit.,* 2010 WL 2557564, at *2 (D.N.J. June 23, 2010) ("[A]lthough the defense [of failure to state a claim] is arguably redundant in that it is essentially a general denial, there is no prejudicial harm to plaintiff and the defense need not be stricken." (quoting *County Vanlines Inc. v. Experian Info. Solutions, Inc.* 205 F.R.D. 148, 154 (S.D.N.Y. 2002)).

Additionally, Plaintiff has not established how she is prejudiced by the affirmative defenses she seeks to strike or how they will unduly complicate the impending proceedings as to satisfy the Rule 12(f) standard.  *See Signature Bank*, 2013 WL 3286154, at *5 (denying a motion to strike where party "fail[ed] to present a valid argument that the defenses will be prejudicial at this early stage of the case.").  In fact, Plaintiff's filing does not even acknowledge the relevant legal standard or analyze how it applies to her motion.  *See Shafer ex rel. Shafer v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-CV-174, 2012 WL 812372, at *3 (W.D. Pa. Mar. 9, 2012) ("State Farm's motion to strike and supporting brief is bereft of any reference to Rule 12(f) or the applicable legal standard governing motions to strike.  It is an uphill battle for a movant to demonstrate that allegations in a complaint are redundant, immaterial, impertinent, or scandalous, which becomes more difficult when the movant does not cite to relevant authority or frame its argument in terms of the appropriate standard." (internal citation omitted)).  Plaintiff's failure to address prejudice is critical as even where an argument to strike a defense is "legally correct and well-founded," the Court may still "decline[ ] to exercise its [substantial] discretion to strike th[e] defense[ ] 'in the absence of a

showing of prejudice to the moving party.'" *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 99 (D.N.J. 2014); *Hope Now,* 2011 WL 883202, at *4 (citations omitted).  Such prejudice may exist where "an affirmative defense will 'substantially complicate the discovery proceedings and the issues at trial,'" which Plaintiff does not address. *Newborn Bros. Co.*, 299 F.R.D. at 99 (citation omitted).

In light of the above, and "[m]indful that motions to strike under Rule 12(f) are highly disfavored" (*Cont'l Cas. Co. v. Crum & Forster Specialty Ins. Co.*, No. 2:20-CV-3843 (WJM), 2021 WL 268175, at *3 (D.N.J. Jan. 27, 2021)), the Court will exercise its discretion to deny Plaintiff's motion at this juncture.

## V.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (ECF No. 20, 25) are granted in their entirety and Plaintiff's motion to strike (ECF No. 22) is denied.

**Accordingly, IT IS** on this 25th day of January, 2024

**ORDERED** that the Main Street Defendants' motion to dismiss (ECF No. 20) is **GRANTED**; and it is further

**ORDERED** that the Movement Mortgage Defendants' motion to dismiss (ECF No. 25) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to strike (ECF No. 22) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to file the sur-reply (ECF No. 34-1) docketed at ECF No. 34 is **GRANTED**.

**SO ORDERED.**

*s/Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**