NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOLITA CABRERA,<br><br>Plaintiff,<br><br>v.<br><br>BRYAN NAZOR, *et al.*,<br><br>Defendants. | No. 23-cv-2745<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendants Mahdey Salhab[1] and Salhab Law, LLC's (the "Salhab Defendants") unopposed motion to dismiss *pro se* plaintiff Lolita Cabrera's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 52; *see also* ECF No. 52-1 ("Moving Br."); ECF No. 1 ("Compl."). The Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court will dismiss Plaintiff's claims against the Salhab Defendants.

**I.   BACKGROUND**

    **A.   Plaintiff's Allegations**

The instant dispute arises out of Plaintiff's purchase of a residential property located at 76 West 25th Street in Bayonne, New Jersey (the "Subject Property"). *See generally* Compl. Plaintiff alleges that Mr. Salhab (and his firm) represented her during this purchase. *See id.* ¶¶ 25, 28, 33, 43; *see also* ECF No. 1-2 at 15 ("I've advised Ms. Cabrera that the lender requires the deed and

---

[1] The caption of the complaint lists "Madley Salhab" as a defendant. Compl. However, the Salhab Defendants assert that the correct spelling of Mr. Salhab's name is "Mahdey Salhab." ECF No. 52 at 3; *see* Moving Br. at 1. The Court notes that Mr. Salhab's name is spelled correctly elsewhere in the complaint. *See, e.g.*, Compl. ¶ 8.

mortgage be recorded."); *id.* at 59 (listing Mahdey Salhab, Esq. on "buyers attorneys fee" line of closing cost details). The following factual background comes from Plaintiff's complaint.[2]

Around January 2023, Plaintiff contacted defendant Adam Goldberg of defendant Movement Mortgage, LLC ("Movement Mortgage") "about buying [a] property." Compl. ¶ 17; *id.* ¶¶ 9, 13. Mr. Goldberg helped her apply for a mortgage with his company, including by sending her the "requirements for a second FHA home loan [and] the guidelines for a mortgage . . . with Movement Mortgage." *Id.* ¶¶ 18–19. At the time, Plaintiff had been "sav[ing] money to purchase a second home." *Id.* ¶ 72.

After viewing the Subject Property with her realtor in early March 2023, Plaintiff offered to buy it for $840,000, and the sellers accepted her offer on April 3, 2023. *Id.* ¶¶ 20, 22, 24. Around the same time, Plaintiff "sent a certified check of $14,700.00 from her business account to Mr. Salhab," had the Subject Property appraised, and finalized her mortgage with Movement Mortgage by supplying Mr. Goldberg with the required documentation. *Id.* ¶¶ 23, 25–26. Movement Mortgage ultimately approved her mortgage on April 21, 2023. *Id.* ¶ 27.

On April 28, 2023, Plaintiff "sign[ed] a unilateral contract" at Mr. Salhab's office to close on the property. *Id.* ¶ 28. She was told that the "closing balance . . . would be $44,657.80," and on Mr. Salhab's instruction, she then "drop[ped] off" a certified check for that amount and other documents to a receptionist at defendant Main Street Title Agency's ("Main Street") office. *Id.* ¶¶ 28, 32–34. At the time of signing, "Plaintiff was elated . . . because she was happy to purchase a second home." *Id.* ¶ 32.

---

[2] As discussed below, the Court accepts Plaintiff's allegations as true for the purposes of the motion.

2

On April 30, 2023, Plaintiff commenced a live steam on her Instagram account to "discuss[] FHA guidelines and how she was excited about purchasing the Subject Property." *Id.* ¶ 36. An individual named Orlando Acosta joined the live stream and, in response to Plaintiff mentioning that her lawyer informed her that her loan would be sold at some point, informed Plaintiff "that she was a victim of mortgage fraud." *Id.* ¶¶ 37–38. Mr. Acosta asked whether Plaintiff had received "the right to rescission documents and original ink signature deed at closing" and, when she informed him that she had not, Mr. Acosta advised her "to reach out to her lender and ask them not to record her original ink signature deed." *Id.* ¶¶ 39–41.

Accordingly, Plaintiff proceeded to advise Mr. Goldberg of Movement Mortgage that she "she did not want the original ink signature deed recorded." *Id.* ¶ 42. Mr. Goldberg advised her to call her attorney. *Id.* Plaintiff then contacted Mr. Salhab to tell "him that she did not want her deed to be recorded." *Id.* ¶ 43. She also contacted John Bartnick and Bryan Nazor of Main Street to advise them of the same. *Id.* ¶¶ 44–47; *see also id.* ¶¶ 2, 4. When Mr. Nazor called Plaintiff to discuss the matter, "she gave the phone to Mr. Acosta to speak as her power of attorney" and Mr. Acosta reiterated Plaintiff's demand that the signed deed be returned to her. *Id.* ¶¶ 48–49. Plaintiff contends that Mr. Nazor was "very rude," "hung up the phone twice," and told her that the mortgage note and deed would be recorded without her consent. *Id.* ¶ 51. When asked by Mr. Nazor whether Plaintiff would be keeping the property or rescinding the transaction, "[s]he confirmed that she was doing both." *Id.* ¶ 53. Plaintiff also "reached out to Movement Mortgage [to] revoke[] all emails[] and rescind[] their security interest in Plaintiff's property by terminating the contract." *Id.* ¶ 50. She also contacted Mr. Salhab and Mr. Goldberg "because [she] was rescinding all legal obligations and securities" concerning the Subject Property. *Id.* ¶ 52.

3

In a subsequent email to Mr. Nazor and Mr. Bartnick, Plaintiff again demanded the original ink deed be returned to her, along with her deposit totaling $59,657.80, and informed them that she would be picking up the original ink deed on May 4, 2023, because "she rescinded any potential interest into the property that the bank potentially had." *Id.* ¶¶ 55–56. Plaintiff added that "a forensic mortgage audit would be conducted, and a complaint [would be] sent to the FBI Mortgage Fraud Department, U.S. Attorney General's office, the State of New Jersey Attorney General's office, the IRS Commissioner's office, and the Office of the Comptroller of Currency." *Id.* ¶ 57. Plaintiff also forwarded her email communications with Mr. Nazor to Mr. Goldberg, Mr. Salhab, Mr. Bartnick, and Patricia Kelly, another Main Street employee. *Id.* ¶ 58; *see also id.* ¶ 5.

At the same time, Plaintiff contacted the Office of the Register of Deeds and Mortgages to inform the office that she did not consent to the deed being recorded. *Id.* ¶ 60. Nevertheless, representatives from that office replied: "Please be advised if the deed is received in the proper order we record it. We do not accept emails stating anything advising us not to record a deed. We would suggest you reach out to an attorney regarding this matter." *Id.* ¶ 61.

Plaintiff asserts that on May 5, 2023, Movement Mortgage "put the fraudulent mortgage on Plaintiff's credit" and on May 6, 2023, Main Street sent Plaintiff the original deed. *Id.* ¶¶ 62–63. Then, "[o]n May 8, 2023, agents of Movement Mortgage put the fraudulent loan through and put in [sic] on Plaintiff's credit with Experian, Transunion and Equifax." *Id.* ¶ 64.

On May 11, 2023, Plaintiff began discussions with "a woman named Melissa from Movement Mortgage" to address her concerns about "how Movement Mortgage could have put a fraudulent mortgage on Plaintiff's credit," even though "she had . . . the original ink signature deed." *Id.* ¶¶ 65–66. Melissa informed Plaintiff that she could not accommodate Plaintiff's request "to produce documents and names of everyone who pushed the fraudulent mortgage through even

4

after Plaintiff had sent out emails that she had rescinded the transaction." *Id.* ¶ 67. Plaintiff and Mr. Acosta as her "power of attorney" then spoke to "the Vice President" of Movement Mortgage, who also "could not produce" the requested names and documents despite Plaintiff's explanation of the circumstances. *Id.* ¶¶ 68–70; *see also id* ¶ 48.

Ultimately, Plaintiff contends that she "lost a total of $59,657.80 which has not been refunded to her after she expressly informed Defendants of her intention to rescind the transaction and the Register's office went ahead and recorded her original ink signature deed under Defendants' instructions." *Id.* ¶ 71. Plaintiff states that these events have also caused her "mental anguish and emotional distress." *Id.* ¶ 72.

### B.     Procedural History

On May 22, 2023, Plaintiff filed her complaint, which asserts claims for (1) violations of 15 U.S.C. § 1635, (2) violations of 15 U.S.C. § 1681s-2(a), (3) violations of 12 C.F.R. § 1006.34, (4) violations of 15 U.S.C. § 1692e, and (5) intentional infliction of emotional distress.[3] *Id.* ¶¶ 74–117.

The Salhab Defendants filed an answer on June 29, 2023. ECF No. 16. In their answer, the Salhab Defendants asserted 36 "Separate Defenses." *Id.* at 11–16. Plaintiff then moved to

---

[3] In her complaint, in addition to the Salhab Defendants, Plaintiff named the following defendants: Bryan Nazor; Dominick DeCarlo; John Bartnick; Patricia Kelly; Casey Crawford; Scott Conforti; Adam Goldberg; Jeralyn J. Lawrence; Timothy F. McGoughran; Diane Coleman; Main Street; Movement Mortgage; and the New Jersey State Bar Association. Compl. On June 24, 2023, Plaintiff voluntarily dismissed her claims against defendants Timothy McGoughran, Jeralyn J. Lawrence, and the New Jersey State Bar Association pursuant to Federal Rule of Civil Procedure 41(1)(A)(ii). ECF No. 15. On January 25, 2024, in an Opinion and Order denying Plaintiff's motion to strike the Salhab Defendants' separate defenses, the Court granted motions to dismiss filed by (1) defendants John Bartnick, Dominick DeCarlo, Patricia Kelly, Bryan Nazor, and Main Street Title Agency and (2) Casey Crawford, Adam Goldberg, and Movement Mortgage, LLC. ECF No. 41. The remaining defendants, Scott Conforti and Diane Coleman, have not appeared. *See* ECF No. 41 at 5 n.2.

strike 27 of those defenses, ECF No. 22, which the Court denied on January 25, 2024, ECF No. 41 at 18–21; *see Cabrera v. Nazor*, No. 23-2745, 2024 WL 310523, at *8–9 (D.N.J. Jan. 25, 2024).

The Salhab Defendants filed their motion to dismiss on September 13, 2024. ECF No. 52; Moving Br. After Plaintiff failed to timely respond, the Court entered an order "direct[ing] [Plaintiff] to respond to the motion by May 15, 2025, [and warning Plaintiff that the motion would] be deemed unopposed but nonetheless considered on the merits." ECF No. 54 (citing *Jenkins v. Young*, No. 13-2466, 2014 WL 7365803, at *6 (D.N.J. Dec. 23, 2014)). Plaintiff failed to respond, so the Court now deems the motion unopposed and will consider it on its merits. *See Uddin v. Goodson*, No. 15-8025, 2017 WL 945082, at *3 (D.N.J. Mar. 10, 2017) ("When plaintiffs fail to file an opposition to a motion to dismiss, the Court must address the unopposed motion to dismiss on its merits."); *Jenkins*, 2014 WL 7365803, at *6; *see also Starr v. Equifax,* No. 22-5012, 2024 WL 816223, at *3 (E.D. Pa. Feb. 27, 2024).

## II. LEGAL STANDARD

### A. The Court Will Treat the Rule 12(b)(6) Motion to Dismiss as a Rule 12(c) Motion for Judgment on the Pleadings

Technically, a party may not file a Rule 12(b)(6) motion after filing an answer, as the Salhab Defendants have done here. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *Weber v. Pilot Travel Ctrs., LLC*, No. 11-5977, 2012 WL 924871, at *3 (D.N.J. Mar. 19, 2012) ("Once a defendant files its Answer, . . . it may no longer move to dismiss the Complaint under Rule 12(b)(6)."). However, a party can file a motion for judgment on the pleadings even after the pleadings are closed, Fed. R. Civ. P. 12(c), and the Court can treat a post-answer Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings, *see Short v. N.J. Dep't of Educ.*, No. 23-21105, 2025 WL 984730, at *1 n.2 (D.N.J. Mar. 28, 2025); *Internet Prods. LLC v. LLJ Enters.,*

6

*Inc.*, No. 18-15421, 2020 WL 6883430, at *3 (D.N.J. Nov. 24, 2020). Given that the issues presented in the Salhab Defendants' motion focus on the sufficiency of the complaint and do not involve an issue of fact, the Court will convert the motion to dismiss into a motion for judgment on the pleadings.

### B. The Rule 12(c) Standard

The Court may grant a motion for judgment on the pleadings only if "no material issue of fact remains to be resolved" and the movant "is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).; *see Mosley v. New Jersey*, No. 20-18885, 2022 WL 3913739, at *3 (D.N.J. Aug. 31, 2022). The moving party is entitled to judgment as a matter of law when "no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) ("A plaintiff can survive a Rule 12(c) motion if her complaint contains 'sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" (alteration in original) (citation omitted)). In considering a Rule 12(c) motion, the Court "will accept the complaint's well-ple[d] allegations as true[] and construe [them] in the light most favorable to the nonmoving party." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008); *id.* ("The [C]ourt . . . will not accept unsupported conclusory statements."). The standard for deciding a Rule 12(c) motion for judgment on the pleadings is identical to that under Rule 12(b)(6).[4] *See Turbe*, 938 F.2d at 428; *Kramer v. City of Jersey City*, No. 09-3767, 2010 WL 2326259, at *3 (D.N.J. June 3, 2010), *aff'd*, 455 F. App'x 204 (3d Cir. 2011).

---

[4] Given Plaintiff's *pro se* status, the Court construes the complaint "liberally and hold[s] it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

7

### III. DISCUSSION

Plaintiff asserts five claims against the Salhab Defendants, which the Court will address in turn. Because Plaintiff has failed to assert a plausible claim for relief, the Court will dismiss Plaintiff's claims against the Salhab Defendants.

### A. The Truth in Lending Act Claim (15 U.S.C. § 1635)

Plaintiff first asserts a claim under the Truth in Lending Act ("TILA"). Compl. ¶¶ 74–86. TILA provides borrowers with the right to rescind "certain consumer credit transactions." *Gonzales v. CIT Grp./Consumer Fin., Inc.*, No. 07-4156, 2008 WL 4771856, at *2 (E.D. Pa. Oct. 29, 2008). Plaintiff alleges that the Salhab Defendants violated TILA by failing to honor her request to "rescind" her purchase of the Subject Property. Compl. ¶ 81; *see also id.* ¶¶ 82–84.

Plaintiff's TILA claim is not plausible for several reasons. First, TILA's "right to rescind . . . does not apply to residential mortgage transactions." *Rivera v. Stearns Lending, LLC*, No. 23-653, 2023 WL 6962065, at *2 (E.D. Pa. Oct. 20, 2023); *see* 15 U.S.C. § 1635(e)(1) ("This section does not apply to . . . a residential mortgage transaction as defined in" 15 U.S.C. § 1602(x)); *id.* § 1602(x) (defining "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"). Here, the only mortgage transaction identified in the complaint is Plaintiff's mortgage for the Subject Property, which Plaintiff alleges facilitated the "purchase [of her] second home." Compl. ¶ 32; *see also id.* ¶¶ 19, 35. TILA therefore has no application to Plaintiff's alleged residential mortgage transaction. *See Gray v. Wells Fargo Home Mortg.*, No. 11-2945, 2012 WL 243750, at *2 (D.N.J. Jan. 24, 2012) (noting that "[t]his Court and other courts in this Circuit have regularly applied this TILA exemption to loans made for the purchase of residences" and collecting cases).

8

Second, TILA's right to rescind attaches only when a lender retains a security interest in a "property which is used as the *principal* dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a) (emphasis added); *see In re Cmty. Bank of N. Va.*, 418 F.3d 277, 304 n.19 (3d Cir. 2005). Plaintiff's complaint makes clear that she planned to use the Subject Property as her "second home." Compl. ¶ 32; *see also id.* ¶¶ 19, 72, 115. Therefore, Plaintiff had no right under TILA to rescind the transaction involving the Subject Property, because she does not allege that she purchased it as her principal dwelling. *See Cabrera*, 2024 WL 310523, at *4; *see also Brady v. Santander Consumer USA*, No. 22-5051, 2024 WL 4680027, at *2 (E.D. Pa. Nov. 5, 2024) (finding TILA inapplicable to transaction that lacked connection to plaintiff's "principal dwelling").

Third, TILA creates private rights of action against creditors and Plaintiff asserts no facts that the Salhab Defendants have "operated in the capacity of 'creditor,' as is required for civil liability under the statute." *Siwoniku v. Fed. Nat'l Mortg. Ass'n*, No. 17-3949, 2018 WL 4361586, at *2 (E.D. Pa. Sept. 12, 2018); *see Cabrera*, 2024 WL 310523, at *4 (citing *Wiggins v. Cap. One Auto Fin.*, No. 22-4172, 2023 WL 4348730, at *4 (D.N.J. July 5, 2023)). The Salhab Defendants are a law firm and a lawyer who represented Plaintiff during her purchase of the Subject Property. Compl. ¶¶ 25, 28, 33, 43; *see also* ECF No. 1-2 at 15, 59. Plaintiff does not allege that the Salhab Defendants served as a creditor or were a party to the mortgage transaction she details in her complaint. Therefore, even if the transaction alleged could give rise to a plausible TILA claim, that claim would not be viable against the Salhab Defendants. *See Gunn v. First Am. Fin. Corp.*, No. 13-174, 2014 WL 2445750, at *4 (D. Del. May 30, 2014) ("In no way do the allegations of the Amended Complaint even hint that First American is a creditor as that term is defined by the

9

TILA. It follows that the TILA is inapplicable to the claims raised against First American . . . ."). Therefore, Plaintiff's TILA claim fails.

B.     The Fair Credit Reporting Act Claim (15 U.S.C. § 1681s-2(a))

Plaintiff next asserts a claim under the Fair Credit Reporting Act ("FCRA"). Compl. ¶¶ 87–95. In particular, Plaintiff cites the FCRA's provision prohibiting any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency" if either (1) "the person knows or has reasonable cause to believe that the information is inaccurate" or (2) "the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A), (B); see Compl. ¶¶ 88, 91 (quoting from 15 U.S.C. § 1681s-2(a)(1)(A), (B)). However, private individuals cannot assert claims for violations of 15 U.S.C. § 1681s-2(a), because "such claims are available only to the Government." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Therefore, Plaintiff has no viable claim against the Salhab Defendants under this subsection of the FCRA.[5]

C.     The Fair Debt Collection Practices Act Claims (12 C.F.R. § 1006.34 & 15 U.S.C. § 1692e)

Plaintiff next asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), which "provides consumers with a private cause of action against debt collectors who fail to comply with the [a]ct." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006); see Compl. ¶¶ 96–110. First, she cites 12 C.F.R. § 1006.34, which requires debt collectors to provide certain information to consumers. Compl. ¶¶ 96–105; see *Devoe v. Frontline Asset Strategies, LLC*, No. 23-10069, 2024 WL 2045642, at *4 (D.N.J. May 7, 2024); *Cabrera*, 2024 WL 310523, at *6; see

---

[5] Plaintiff also does not allege that the Salhab Defendants were involved in the furnishing of any information to credit reporting agencies. 15 U.S.C. § 1681s-2(a)(1).

10

*also Diaz v. KLS Fin. Servs., Inc.*, No. 24-38, 2024 WL 2160861, at *3 n.2 (W.D.N.C. May 14, 2024) (explaining that the Consumer Financial Protection Bureau implements rules regarding the FDCPA, including 12 C.F.R. § 1006.34).  Second, she cites 15 U.S.C. § 1692e, which prohibits "debt collector[s]" from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  *See* Compl. ¶¶ 106–10.

Both of these claims fail because Plaintiff has not pled that the Salhab Defendants are debt collectors.  The FDCPA defines a debt collector as either "(1) any person 'who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' . . . , or (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"  *Cabrera*, 2024 WL 310523, at *6 (quoting *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 632 (E.D. Pa. 2019)); *see Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87 (2017).  However, Plaintiff has not pled "a single fact demonstrating that" the Salhab Defendants "engage in a business whose principal purpose is the collection of debts owed to another or that they undertook any such debt collection activity."  *O'Connor v. First All. Home Mortg.*, No. 12-111, 2012 WL 762351, at *3 (D.N.J. Mar. 6, 2012); *Carter v. Tacony Crossing 2021 LLC*, No. 22-4941, 2023 WL 2025037, at *3 (E.D. Pa. Feb. 15, 2023) (finding that plaintiff failed to "allege[] that any Defendant is a debt collector" because the "Complaint contains no facts about whether or how Defendants collect or attempt to collect debts owed to others").  Therefore, Plaintiff's FDCPA claims against the Salhab Defendants must be dismissed.

### D. The Intentional Infliction of Emotional Distress Claim

Lastly, Plaintiff asserts a claim for intentional infliction of emotional distress.  Compl. ¶¶ 111–17.  Specifically, Plaintiff alleges that the Salhab Defendants intentionally inflicted emotional distress "when they recorded [her] original ink signature deed even when she expressly informed

11

them of her intention to rescind the transaction." *Id.* ¶ 114; *id.* ¶ 116 ("When she realized that the transaction was fraudulent and wanted to exercise her right to rescind it, Defendants maliciously declined to allow her to rescind the transaction."). "Under New Jersey law, to make out a *prima facie* case of [intentional infliction of emotional distress], a plaintiff must show that: (1) the defendant acted intentionally [or recklessly]; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) that the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it."[6] *Scioscia v. Walmart Corp.*, No. 23-1940, 2023 WL 8237407, at *3 (D.N.J. Nov. 28, 2023) (alterations in original) (quoting *Cagno v. Ivery*, No. 19-20384, 2022 WL 17887231, at *8 (D.N.J. Dec. 23, 2022)).

Plaintiff has not alleged any conduct by the Salhab Defendants that goes beyond the bounds of decency in a civilized community. Indeed, with respect to the Salhab Defendants, Plaintiff alleges only that Mr. Salhab and his firm were unable to successfully rescind her purchase of the Subject Property *after she closed on the property*, which is not conduct that goes beyond all possible bounds of decency in a civilized community. *See Cabrera*, 2024 WL 310523, at *8 ("Defendants' conduct as pleaded—[including that] Plaintiff's deed was recorded despite her objections—is insufficient to plausibly constitute an intentional or reckless act that is 'utterly intolerable in a civilized community.'" (quoting *Cagno*, 2022 WL 17887231, at *8)).

The complaint also lacks allegations showing a causal relationship between any of the Salhab Defendants' conduct and Plaintiff's emotional distress. For example, Plaintiff does not

---

[6] New Jersey law governs this claim because Plaintiff's alleged injuries occurred in the State. *See Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 880 (D.N.J. 2010).

specify how the Salhab Defendants' failure to rescind her purchase of the Subject Property caused her emotional distress. *See Ingris v. Drexler*, No. 14-2404, 2015 WL 1472657, at *3 (D.N.J. Mar. 30, 2015) ("Plaintiff also has not alleged the element of causation" because "he has not alleged a causal link between actions by DeLorenzi and Krentzlin in particular and any resulting emotional distress.").

Finally, Plaintiff "'does not allege that any doctor or other medical or mental health professional indicated that [she] has suffered severe emotional distress,' nor does [she] allege in any detail how [her] physical symptoms have manifested as a result of" the Salhab Defendants' alleged conduct. *Goddard v. Interserver.net*, No. 25-3883, 2025 WL 1823203, at *4 (D.N.J. July 2, 2025) (citation omitted). Instead, Plaintiff provides only "[b]are and conclusory allegations" that she suffered emotional distress, which are insufficient to state a claim for intentional infliction of emotional distress. *Id.*; *see, e.g.*, *Jevremovic v. Courville*, No. 22-4969, 2024 WL 4024144, at *9 (D.N.J. Aug. 30, 2024); *Stevenson v. Cnty. Sheriff's Off. of Monmouth*, No. 13-5953, 2015 WL 512423, at *8 (D.N.J. Feb. 6, 2015). Thus, Plaintiff's intentional infliction of emotional distress claim is insufficient.

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 21st day of November 2025;

**ORDERED** that the Salhab Defendants' motion (ECF No. 52) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against the Salhab Defendants are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and

13

Order. Insofar as Plaintiff submits an amended complaint, she shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is finally

**ORDERED** that if Plaintiff fails to timely amend the complaint, this dismissal shall be with prejudice.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**
